DETERMINED IN THE

# THIRD DISTRICT

OF THE ⌐

# APPELLATE COURT OF ILLINOIS,

## DURING THE YEAR 1904.

---

**George B. Ranson v. John Ranson, et al., Executors, etc.**

1. TENANCY FROM YEAR TO YEAR—*how, terminated.* Such a tenancy can only be terminated by written notice, served at least sixty days prior to the end of the current term.

2. INCOMPETENT EVIDENCE—*when admission of, will not reverse.* Where the court has tried a cause without a jury and has admitted incompetent evidence, it will be presumed that the court in deciding the cause rejected such incompetent evidence, where there is sufficient competent evidence in the record to sustain the finding.

Forcible entry and detainer. Appeal from the Circuit Court of Morgan County; the Hon. OWEN P. THOMPSON, Judge, presiding. Heard in this court at the November term, 1903. Reversed. Opinion filed June 28, 1904.

JOHN A. BELLATTI, for appellant; JAMES O. PRIEST, of counsel.

M. T. LAYMAN and E. P. KIRBY, for appellees.

MR. JUSTICE GEST delivered the opinion of the court.

The appellant and appellees are brothers, and sons of James Ranson, deceased. James Ranson died July 11, 1902, testate, and appellees are executors of his will.

This suit is by appellees against appellant in forcible detainer. It was commenced before a justice of the peace

(I)

and taken by appeal to the Circuit Court, where a trial
was had by the court without a jury. The lands in con-
troversy had been occupied by defendant, George B. Ran-
son, for more than twenty years, as tenant of his father
from year to year, at rates of yearly rent agreed upon from
time to time between them. Plaintiffs assuming that
defendant's yearly term would expire on the 1st day of
March, 1903, served notice upon defendant on the 20th of
December, 1902, to terminate his tenancy on the last day
of February, 1903, and on March 2, made demand in writing
for possession and thereupon suit was begun before the
justice.

There is but one question presented for determination :
was due notice given to terminate the tenancy ? The
answer to this question must depend upon the further
question as to when the yearly term ended. Plaintiffs
introduced in evidence a paper called Exhibit F, signed by
defendant, George B. Ranson, dated October 20, 1894,
which recites that he has for several years rented of his
father, James Ranson, certain described lands, for the sum
of $480 a year to be paid yearly on the first day of January,
each and every year, and that there is due four years' rent,
amounting to $1,920, and then acknowledges that he has
received that sum by way of advancement, and promises
to pay him the sum of $480 yearly on the first day of Janu-
ary of each year as rent as long as he occupies it, the first
payment to be made January 1, 1895.

Plaintiffs also introduced in evidence the following paper,
called Exhibit G :

" January 1st, 1896.
For value received by me in lands and profits from my
father, James Ranson, due the first day of January, 1896,
I agree to pay him or order the sum of nine hundred and
ninety-three dollars and 60 cents with interest at the rate
of seven per cent per annum from due until paid.

Witness my hand.

GEORGE B. RANSON."

And the following called Exhibit H :

" No. 164. I agree further to pay to (father) James

Ranson the sum of five hundred and fifty dollars a year annually on the first day of January, each and every year I hold and occupy said lands, or any part thereof, commencing on the first day of January, 1896, with interest after due at the rate of seven per cent per annum until paid. The lands are the south one hundred and twenty acres, more or less, of the southeast quarter of section four, township fourteen north, range eleven west of the third principal meridian. Also lot number (6) six of section (16) sixteen, same township and range—for value received by me.

Witness my hand.

GEORGE B. RANSON."

The plaintiffs also introduced several witnesses by whom it was sought to prove that the custom prevailed in the neighborhood of these lands of beginning the term of lease on March 1.

The defendant was permitted to testify over plaintiffs' objection that his present year's term began January 1, 1903. He also introduced in evidence a paper called Exhibit I, which is as follows:

"June 23, 1889. This is to certify that we have had a settlement for all accounts between us and for rents—up to January 1, 1889, as witness our hands day and date above.

JAMES RANSON,
GEO. B. RANSON,
MARY E. RANSON."

The court found for plaintiffs and entered judgment accordingly. It is conceded that defendant was a tenant from year to year. It seems clear to us from the papers offered in evidence that the yearly term of the defendant ended January 1, and not March 1. Exhibit G is dated January 1, 1896; it acknowledges that there is due from George Ranson to his father, on that day, a certain sum for "lands and profits" which we take to mean for rents, and he promises to pay it with interest until paid. We are satisfied from the evidence that Exhibit H was made at the same time; it bears no date but shows on its face that it was a part of or attached to another paper. It

says, "I agree further." Exhibit G is numbered 163 and H is numbered 164 and both were so numbered by the father, James Ranson. The phrase in Exhibit H which reads, "commencing on the first day of January, 1896," refers to the beginning of the term and not to the time of first payment. By Exhibit G, the rent has been settled up to January 1, 1896, if plaintiffs' contention be correct. George, by Exhibit H, promises to pay his father the further sum of $550 on the same day, January 1, 1896, for the year then beginning. It is already provided in Exhibit H that payments each year shall be on January 1; there is no need to repeat it, but there was need to state the beginning of the term.

Exhibit I bears date June 23, 1889. It is signed by both George and his father, and it states that "all accounts between us and for rents up to January 1, 1889," have been settled. The rental appears to have been in a gross yearly sum, payable at one time; there seems not to have been any division of the payments into semi-annual, quarterly, or otherwise. It would seem reasonable, if the term began March 1, that the paper, having been made in June, should state that the rents were settled up to March 1. If March 1 were the date of termination, then two months' rent, for January and February, were left unsettled, and the rent was not payable monthly or bimonthly. This evidence cannot be overcome by testimony of witnesses as to what the custom was in the neighborhood relative to time when terms began, conceding for the purpose of this consideration that such a custom was established.

In arriving at our conclusion on this point, we do not consider the statement of George, that his term began January 1. The court admitted that statement, but doubtless ignored it in arriving at a finding, as it was incompetent. If that statement were to be considered, it would seem to be conclusive of the question. It results necessarily from a finding that the term began January 1, that no sufficient notice of termination of tenancy was given. The notice was served December 20, 1903, only twelve days before

C. & A. Ry. Co. v. Brooks.

January 1, while the statute requires in such case a notice of sixty days.

The judgment will be reversed without remanding.

*Reversed.*

Finding of facts, to be incorporated in the judgment of the court:

We find that the defendant in this cause occupied the premises as tenant from year to year; that his yearly term ended January 1, 1903; that notice to terminate his tenancy was served on him December 20, 1902, not sixty days before the expiration of his then term.